UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TAILER RAMIREZ and MANUEL
RAMIREZ,

        Plaintiffs,

    v.

LTD FINANCIAL SERVICES, L.P.,

       Defendant.

CIVIL ACTION NO.

1:19-CV-2575-CAP

## **O R D E R**

On June 4, 2019, Tailer and Manuel Ramirez initiated this lawsuit concerning the legality of certain actions taken by the defendant, LTD Financial Services, L.P. ("LTD"), with respect to past-due student loans owed by Ms. Ramirez—specifically, (1) an unauthorized $79.00 electronic payment withdrawal from Mr. Ramirez's personal checking account, and (2) a single phone call to Ms. Ramirez after she hired an attorney.[1]  In their complaint [Doc. No. 1], the married plaintiffs allege that LTD's actions violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq.,

---

[1]  In their complaint, the plaintiffs also assert claims based on LTD's alleged unlawful contact with a third-party, but expressly withdrew all such claims in response to the pending motion for summary judgment.

the federal Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 et seq., Georgia's Fair Business Practices Act ("FBPA"), O.C.G.A. §§ 10-1-390 et seq., and Georgia's Unfair and Deceptive Practices Toward the Elderly Act ("UDPTEA"), O.C.G.A. §§ 10-1-850 et seq. This matter is now before the court on the magistrate judge's Final Report and Recommendation ("R&R") [Doc. No. 64]. In the R&R, the magistrate judge recommends granting LTD's motion for summary judgment [Doc. No. 51]. The plaintiffs object to the R&R [Doc. No. 66], and LTD has responded to those objections [Doc. No. 67].

## I.     Factual Background[2]

### A.     LTD's Actions

Due in part to some unfortunate personal-health challenges, Tailer Ramirez fell behind on student loans she borrowed using her maiden name, "Tailer Stofer," with an ex-boyfriend, Jacob Lorenz, serving as co-obligor. On April 10, 2018, her creditor placed two separate student loan accounts with LTD, a debt collection agency, using these names. The accounts (collectively, the "Loan Accounts") were grouped together in LTD's electronic record-keeping system, with the first assigned an account number ending in "0131" (the "0131 Account"), and the second an account number ending in "0132" (the "0132

_____

[2] The plaintiffs have not objected to the statement of facts set forth by the magistrate judge. Accordingly, this court will adopt it in full. The following recitation is derived from the R&R with citations omitted.

Account"). Between the two Loan Accounts, LTD designated the 0131 Account as the "primary" account. Ms. Ramirez's address was recorded in LTD's system as "907 Cannon View Ln, Junction City, KS 66441," which is where the couple lived in early 2018.

At some point thereafter, Mr. Ramirez authorized LTD to withdraw funds from his personal checking account to make recurring payments toward the Loan Accounts on his wife's behalf. The checking account was not a joint account to which Ms. Ramirez had access. In August 2018, Ms. Ramirez contacted LTD to stop her husband's electronic payments; however, LTD did not cancel the payments at Ms. Ramirez's request because they were withdrawn from Mr. Ramirez's personal checking account.[3]

Later, on September 28, 2018, Mr. Ramirez himself called LTD to revoke his authorization for future electronic payments. During the call, Mr. Ramirez explained that he was calling "about [his] wife's account. Her name is Tailer Stofer." Before processing the request, the LTD representative with whom Mr.

_____

[3] In the R&R, the magistrate judge noted that the plaintiffs do not allege in their complaint that Ms. Ramirez attempted to cancel her husband's electronic payments, and their corresponding legal claims do not turn on any such attempt. R&R at 3 n.2 [Doc. No. 64]. The magistrate judge further noted that the plaintiffs have not presented any evidence that Ms. Ramirez was in fact authorized to make or cancel withdrawals from Mr. Ramirez's personal checking account. *Id.* In their objection to the R&R, the plaintiffs clarify that they do seek to hinge LTD's liability, in part, on Ms. Ramirez's phone call. The court will address this argument below. *See infra* pp. 11 – 13.

Ramirez spoke confirmed that "[t]his [call] is regarding Tailer's . . . Student Loan ending in 0131. . . [s]he did . . . give us permission to speak with you." The LTD representative then placed a notation on the 0131 Account recording Mr. Ramirez's revocation and cancelled any further electronic payments. The representative separately placed a notation on the 0132 Account but did not actually cancel electronic payments as to that account.

Because payments on the 0132 Account had not been cancelled, in November 2018, LTD withdrew $79.00 from Mr. Ramirez's checking account. Evidently, LTD withdrew no further payments from Mr. Ramirez's checking account thereafter. After the November 2018 payment withdrawal, the plaintiffs engaged legal counsel.

On December 5, 2018 at 11:48 p.m., attorney Clifford Carlson electronically delivered a letter to LTD's general customer-care email address on the plaintiffs' behalf. The letter stated, in relevant part:

> I, along with Ronald Daniels of Daniels Law LLC and Trey Taylor of Taylor Law, LLC, represent Tailer and Manny Ramirez in connection with the alleged debt associated with the SSN ending in [----] and any other account or alleged account you or your clients allege Mrs. and/or Mr. Ramirez is responsible for. You are not to contact my clients for any purpose. If you wish to discuss an alleged debt, you must do so through me until further advised. Pursuant to 15 U.S.C. § 1692c(C), if you are a "debt collector," you are directed to cease and desist any further communication with my client and collection efforts immediately. Moreover, we demand any automatic payment drafting for any and all accounts cease immediately.

Less than fourteen hours later, at 1:05 p.m. on December 6, 2018, LTD's customer-care unit responded to Mr. Carlson via email, explaining that LTD needed additional information to locate the account at issue. The email stated:

> We are unable to locate the account based upon the information you provided. In order for us to locate the account, we need one of the following:
>
> -Account/Reference number
> -Full Address
> -Social Security number(s)
> -Phone number(s)

LTD is only able to name-search its records by using the name of the consumer under whom an account is listed, and the company is unable to search its account records solely on the basis of partial consumer Social Security numbers.

Mr. Carlson followed up with an email to LTD days later, on December 9, 2018 at 4:10 p.m., stating: "[Plaintiffs'] address is 5513 Boby Drive; Columbus, GA 31907." The plaintiffs had relocated to this address in August 2018, and Ms. Ramirez testified that she believes she "would have" informed LTD by phone. However, the plaintiffs admit that there is no evidence showing that they ever actually forwarded this address to LTD, or that LTD's records were otherwise updated at the time. The next day, on December 10, 2018, LTD again responded that it needed additional information, explaining:

We are still unable to locate the account based upon the information you provided. In order for us to locate the account, we need one of the following:

-Account/Reference number
-Social Security number(s)
-Phone number(s)

Mr. Carlson did not respond.

On December 11, 2018, six days after Mr. Carlson's letter to LTD, an LTD representative called Ms. Ramirez regarding the Loan Accounts. At the start of the call, the LTD representative stated that she was "[t]rying to get ahold of Tailer Stofer," and requested confirmation that she was in fact "speaking with Tailer Stofer." Ms. Ramirez confirmed—although she did not provide her married name—and then she immediately informed the representative that she was "working with attorneys." The representative then asked for the attorney's name and number. Ms. Ramirez provided Mr. Carlson's name and phone number, and the LTD representative confirmed that the legal representation related to the Loan Accounts. The parties did not further discuss collection on the Loan Accounts, and the call ended approximately one minute later with the LTD representative indicating that

she would give the plaintiffs' attorney a call.[4]  LTD made no further calls to the plaintiffs.

## B.  LTD's Policies & Procedures

LTD has established a general Compliance Program Policy, the purpose of which is to ensure company compliance with "all applicable consumer protection statutes and regulations."  To that end, the company set up a Steering Committee, which meets monthly, "to oversee, review and supervise" compliance activities, and it has appointed a Chief Compliance Officer "to manage the consumer compliance risk for the company."  The Chief Compliance Officer is responsible for developing training material to ensure legal compliance across the company, and the Steering Committee ensures that such training is effectively implemented.

As particularly relevant here, LTD has policies specifically addressing EFTA and FDCPA compliance.  The EFTA policy sets out guidelines regarding the authorization and processing of electronic payments, including the steps that must be taken to authorize and alter such payments.  Among other things, the policy provides that the party authorizing payment has "the ability to change, cancel or revoke the authorization by contacting and speaking with a

---

[4] The court has reviewed the transcript of this phone call, and it finds a complete recitation of the call is unnecessary for the court's analysis of the plaintiffs' objections associated therewith.  *See infra* pp. 11 – 13.

representative of LTD." In such event, the policy provides detailed step-by-step procedures requiring employees to notate the appropriate account and notify the bookkeeping department regarding the request. The policy also requires that electronic payments "only be taken from the owner of the [relevant] bank account or an authorized signor on the bank account." When multiple related accounts are grouped together, certain notations made on the designated primary account will automatically be reflected as notations on related accounts. However, certain other notations—for example, placing a telephone number on a do-not-call list, or changing or cancelling an electronic payment authorization—will not automatically be notated on the other grouped accounts. Employees are instructed that, in these cases, separate actions and notations must be manually entered for each of the related accounts.

LTD's FDCPA policy establishes guidelines on consumer communications and sets compliance expectations for all employees, providing for continuous employee monitoring and bi-annual testing. In particular, the policy expressly provides that "[i]f an account representative knows that the consumer has retained an attorney to handle the debt and can easily ascertain the attorney's contact information, all contacts must be with that attorney, unless the attorney is unresponsive (after a minimum of 30 days) or agrees to allow direct communication with the consumer." A related policy formally

establishes the computerized account scripts and procedures that employees are required to adopt when a consumer advises of legal representation. For instance, employees are required to obtain the full name and phone number of the consumer's attorney, and then activate certain computer fields while inputting the attorney information into the consumer's electronic account.

LTD trains its employees on the above policies and procedures, violation of which "may result in disciplinary action, up to and including termination" and potential legal liability for damages.

## II.    Legal Standard

To challenge the findings and recommendations of the magistrate judge, a party must file with the clerk of court written objections which "shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis of the objection." *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989). If timely and proper objections are filed, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## III.   Discussion

### A.    Summary of the R&R

As noted above, the magistrate judge recommended summary judgment in favor of LTD on all claims.  R&R at 30 [Doc. No. 64].  In regard to LTD's unauthorized withdrawal from Mr. Ramirez's account, the magistrate judge found that LTD's actions constituted a bona fide error.  *Id.* at 22.  In making this finding, the magistrate judge found uncontroverted evidence that LTD's unauthorized withdrawal of the funds as payment on the 0132 account was an unintentional mistake.  *Id.* at 16.  In addition, the magistrate judge found that LTD provided uncontroverted evidence that it maintained adequate procedures so as to reasonably avoid unauthorized electronic payments like the one withdrawn from Mr. Ramirez's checking account.  *Id.* at 22.

In regard to LTD's phone call to Ms. Ramirez after she retained legal representation, the magistrate judge recommended summary judgment in favor of LTD, finding that the evidence did not reasonably support an inference that LTD had actual knowledge of the plaintiffs' legal representation when it called Ms. Ramirez on December 11, 2018.  *Id.* at 26.  In addition, the court found that LTD was entitled to the bona fide error defense because nothing on the record indicated that the phone call was anything other than an unintentional mistake, and LTD presented evidence of detailed policies and procedures regarding the steps to be taken if a consumer retains an attorney,

including a prohibition on direct consumer contact after representation. *Id.* at 28 - 29.

## B. The Plaintiffs' Objections

The plaintiffs object to the magistrate judge's R&R. The plaintiffs' arguments can be divided into three primary areas: (1) claims the plaintiff alleges the court should have, but did not, consider; (2) arguments that the unauthorized payment was not a bona fide error (or that such a determination was inappropriate on summary judgment); and (3) various arguments related to the December 11 phone call. The court will address these topics below.

### 1. Claims the Court Did Not Consider

In the complaint, the plaintiffs allege that LTD violated "15 U.S.C. § 1692c by calling Plaintiffs when Defendant knew that Plaintiffs were represented by an attorney in violation of § 1692c(a)(2)." Compl. ¶ 34 [Doc. No. 1]. In response to LTD's motion for summary judgment, the plaintiffs attempted to expand the allegations on which they base their FDCPA claim, arguing that LTD continued to communicate with the plaintiffs after being notified on the call in question of representation "to further intimidate and harass Plaintiffs in order to collect the debt." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 8 - 9 [Doc. No. 56]. In the R&R, the magistrate judge found that the plaintiffs' new argument that LTD committed a separate violation when the LTD representative with whom Ms. Ramirez spoke on December 11, 2018,

*continued* the phone call after learning that Ms. Ramirez was represented by counsel was an impermissible attempt to raise a new claim in response to a summary judgment motion. R&R at 23 n.8 [Doc. No. 64]. However, the magistrate judge found that the plaintiffs' contention was without support in the record even if they had properly asserted it. *Id.*

In their objections to the R&R, the plaintiffs argue that their argument concerning the continuing phone call "is a new argument of facts obtained through litigation applying to the pre-existing claim." Obj. at 18 [Doc. No. 66]. Therefore, they contend that the magistrate judge erred when she dismissed their argument as a new claim. *Id.*

The court is not persuaded by the plaintiffs' arguments. All of the alleged facts that serve as the basis for their argument were known to the plaintiffs – who participated in the phone call at issue – since the beginning of this litigation. To allow the plaintiffs to bring a new claim or expand the scope of their claim based on allegations known but not asserted in the complaint "would unjustifiably delay the resolution of this action and work a prejudice on [the] [d]efendant who [has] already spent considerable time and expense preparing responses" to the plaintiffs' claims. *Harris v. Smith*, No. CV 17-00300-CG-B, 2019 WL 5077708, at *7 (S.D. Ala. Aug. 30, 2019), *R. & R. adopted*, No. CV 17-300-CG-B, 2019 WL 5068658 (S.D. Ala. Oct. 9, 2019); *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1186 (in the

context of a motion to amend, "[a] district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings"), *overruled on other grounds by CSX Transportation, Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017). Accordingly, the court adopts the reasoning of the magistrate judge in regard to this issue.

In their objections, the plaintiffs also contend that the R&R failed to address whether LTD's "failure to cease withdrawing payments from Manuel Ramirez's bank account is a violation of the FDCPA." Obj. at 11 [Doc. No. 66]. Since the R&R addresses the plaintiffs' FDCPA claim as it pertains to LTD's unauthorized $79.00 withdrawal from Mr. Ramirez's checking account in November 2018 [Doc. No. 64 at 11 - 22], the court infers that the plaintiffs are asserting new FDCPA claims as they relate to additional withdrawals from Mr. Ramirez's account after Ms. Ramirez's initial call to cancel the payments. However, in the complaint the plaintiffs allege a FDCPA violation in relation to only one payment, the November 2018 payment. Compl. ¶ 35 [Doc. No. 1]. To the extent the plaintiffs' late-breaking arguments seek to amend the complaint to add claims or allegations based on additional withdrawals from Mr. Ramirez's account known to the plaintiffs since the inception of this litigation, they are DENIED for the reasons set forth above.

## 2.    The Unauthorized Payment

The plaintiffs object to the R&R's conclusion that the $79.00 withdrawal from Mr. Ramirez's account was a bona fide error, arguing that LTD failed to maintain procedures reasonably adapted to avoid the unauthorized withdrawal.  While LTD's procedures may be sufficient for canceling single accounts, the plaintiffs contend they are not reasonably adapted to avoid error when dealing with grouped accounts.   Under this general umbrella, the plaintiffs contend that (1) LTD's trainings on grouped accounts does not constitute a procedure; (2) that LTD's use of notes and comments on a grouped account does not constitute a procedure for handling grouped accounts; (3) that LTD has no series of steps its employees must take when a consumer who has multiple accounts requests the cancelation of an automatic payment; (4) that LTD has no procedure to confirm whether a consumer has multiple accounts when the consumer requests deletion of the payment; (5) that LTD has no procedure to confirm whether a request to delete automatic payments applies to a specific account rather than multiple accounts; and (6) that LTD has no "cancel all" feature by which it can cancel all payments to grouped accounts simultaneously.

The court is not compelled by the plaintiffs' arguments.  To explain its procedures for handling the cancelation of automatic payments, LTD submitted the Declaration of David John, LTD's CEO and records custodian.

John Decl. ¶¶ 1 - 3 [Doc. No. 51-3]. In his declaration, Mr. John introduces written policies and procedures detailing how LTD cancels automatic payments. *Id.* ¶¶ 28 – 39. In addition, Mr. John states that LTD "trains its employees on how to process and notate grouped accounts." *Id.* ¶ 34. Mr. John explains that canceling, changing, or revoking a payment arrangement will not automatically be updated on other grouped accounts. *Id.* ¶¶ 35 – 37. Mr. Johns goes on to explain that, in such a situation, a representative will have to go into each grouped account and take action, and further clarifies that LTD has provided specific training to its employees regarding notating and processing grouped accounts. *Id.* ¶¶ 38 – 39. Mr. John's declaration cites to a training session record indicating LTD trained student loan account representatives on grouped accounts.[5] *Id.* at 49.

The plaintiffs admitted that "LTD trains its employees on how to properly notate grouped accounts, including, [sic] having to manually update grouped accounts where the action is not automatically updated." DSOMF ¶ 44 [Doc. No. 51-2]; Pl.'s Resp. to DSOMF ¶ 9 [Doc. No. 56-3]. The plaintiffs have cited no case law suggesting that the court must disregard such training as a component to LTD's procedures for canceling electronic payments,[6] and

---

[5] As detailed above, the plaintiffs' contention that Mr. John's declaration is conclusory regarding the trainings LTD provided is unfounded.

[6] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010) examines the bona fide error defense and draws a distinction between

15

many cases in this circuit suggest that training is an important part of reasonable procedures to prevent errors for purposes of the bona fide error defense. *See Arnold v. Bayview Loan Servicing*, 659 F. App'x 568, 571 (11th Cir. 2016) (finding procedures based on written materials and trainings sufficient for the bona fide error defense); *Isaac v. RMB Inc.*, 604 F. App'x 818, 820 (11th Cir. 2015) (finding "specifically trained" employees to be a critical part of the defendant's policies and procedures for purposes of the bona fide error defense); *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1275 - 77 (11th Cir. 2011) (noting the absence of employee training in its determination that the defendant's procedures were insufficient under the third element of the bona fide error defense). Accordingly, the court finds no merit to the plaintiffs' arguments that employee training was not a valid part of LTD's procedures for canceling automatic payments on grouped accounts.

Similarly, the court finds no merit in the plaintiff's contention that LTD's use of notes and comments on a grouped account does not constitute a procedure for handling grouped accounts. Mr. John's declaration, in conjunction with the plaintiffs' admission, indicates that employees were properly trained in how to use these notes in the context of grouped accounts.

---

procedures applicable to legal reasoning and procedures that help avoid errors like clerical or factual mistakes. It does not suggest that employee training cannot or should not be considered a procedure for purposes of the bona fide error defense.

The fact that the plaintiffs might have employed a different procedure (i.e., the hypothetical "cancel all" feature) if they were in charge of LTD's payment cancelation process does not create a question of fact as to whether the defendant's procedures were reasonable. *See Arnold*, 659 Fed. Appx. at 572 ("Whether or not the alternative . . . suggested by [the plaintiff] would have cured the alleged violation, the existence of such an alternative does not challenge the substantial evidence put forward by [the defendant] that it maintains procedures reasonably adapted to avoid error."); *Rhinehart v. CBE Group*, 714 F. Supp. 2d 1183, 1185 (M.D. Fla. 2010) (". . . a creditor's procedures need not be foolproof.").

The plaintiffs' remaining arguments (that LTD has no series of steps its employees must take when a consumer who has multiple accounts requests the cancelation of an automatic payment; that LTD has no procedure to confirm whether a consumer has multiple accounts when the consumer requests deletion of the payment; and that LTD has no procedure to confirm whether a request to delete automatic payments applies to a specific account rather than multiple accounts) are belied by its own admission that "LTD trains its employees on how to properly notate grouped accounts, including, [sic] having to manually update grouped accounts where the action is not automatically updated." DSOMF ¶ 44 [Doc. No. 51-2]; Pl.'s Resp. to DSOMF ¶ 9 [Doc. No. 56-3]. As noted by the magistrate judge, the error in this case occurred not

because of a paucity of procedures reasonably calculated to avoid the error, but because of human blunder.  R&R at 21 [Doc. No. 64].  Thus, the bona fide error defense applies.

### 3.    The December 11 Phone Call

The plaintiffs object to the magistrate judge's recommendation regarding LTD's phone call to the plaintiffs after LTD received a letter of representation. Specifically, the plaintiffs contend that: (1) LTD had actual knowledge that Tailer and Manuel Ramirez were represented by counsel when they made their December 11 phone call; and (2) whether LTD maintained procedures sufficient to identify the plaintiffs with Ms. Ramirez's accounts is a question of fact for the jury.

In regard to their first argument, the plaintiffs argue that LTD knew Tailer and Manuel Ramirez were represented by counsel.  They contend that LTD had the last four digits of Ms. Ramirez's social security number ("SSN"), and a reasonable juror could conclude that LTD had the ability to search its records by those numbers because LTD's employee asked for Ms. Ramirez's date of birth and the last four digits of her social security number when Mr. Ramirez called to cancel the automatic payments from his bank account.[7]  In

_____

[7] In a footnote, the plaintiffs seem to argue that LTD had actual knowledge of the plaintiffs' representation because the plaintiffs' attorney identified them by their current address in the initial letter of representation and Ms. Ramirez testified in her deposition that she believes she would have provided her

support, the plaintiffs cite to the transcript of a September 2018 phone call between Mr. Ramirez and LTD [Doc. No. 56-1].

The court has reviewed the transcript cited by the plaintiffs and finds that it does not support their argument that LTD could search for accounts based on the last four digits of a SSN. In the transcript, Mr. Ramirez gave Ms. Ramirez's name as "Tailer Stofer." *Id.* After the account representative looked up her account by name, she asked for additional information to verify that she had the correct account, including Ms. Ramirez's birthday and the last four digits of her social security number. *Id.* Nothing in the transcript indicates that the account representative searched for Ms. Ramirez's account based on the last four digits of her SSN. *Id.*

In the absence of argument to the contrary, this court adopts the magistrate judge's interpretation of 15 U.S.C. § 1692c(a)(2) requiring LTD to have actual knowledge of attorney representation with respect to the account

---

current address to the defendants prior to the letter being sent. Obj. at 13 n.37 [Doc. No. 66]. However, the plaintiffs admitted that there is no evidence showing that they ever actually forwarded this address to LTD, or that LTD's records were otherwise updated at the time. *See* R&R at 5 [Doc. No. 64] (citing DSOMF ¶¶ 13, 16; Pl.'s Resp. to DSOMF ¶¶ 4 – 5; Doc. No. 51-4 at 34). In addition, the plaintiffs admit in their objection that LTD did not have Ms. Ramirez's Columbus, Georgia address in its files. *See* Obj. at 15 [Doc. No. 66]. Accordingly, regardless of what Ms. Ramirez believes she told LTD, the plaintiffs have not demonstrated that LTD had actual knowledge of the address when it received the notice of representation from the plaintiffs' attorney.

at issue. R&R at 23 – 24 [Doc. No. 64]. Because the plaintiffs have failed to proffer evidence from which an inference can be drawn that LTD had actual knowledge of the plaintiffs' legal representation when it called Ms. Ramirez on December 11, 2018, the court concludes summary judgment is appropriate on this issue.[8]

Although it is not necessary to reach the plaintiffs' second argument regarding LTD's bona fide error defense, the court will consider it for the record. The magistrate judge found that there is no indication on the record that the December 11, 2018, phone call to Ms. Ramirez was anything other than an unintentional mistake, and further concluded that LTD had presented evidence it maintained procedures reasonably adapted to avoid contact with a consumer after attorney representation had been established.

The plaintiffs do not take issue with LTD's policies and procedures to prevent client contact after they receive a letter of representation; instead, they take issue with LTD's policies and procedures in an extremely nuanced

---

[8] Although the record reflects that a search for Manuel Ramirez, who was not an account holder, would not have identified the accounts at issue, the plaintiffs argue that LTD did not provide testimony that it searched for Mr. Ramirez when notice of representation was provided or provide procedures indicating that such a search is part of the process of connecting an attorney to a consumer when notice of representation is provided. Obj. at 16 – 17 [Doc. No. 66]. Since it is uncontroverted that a search for Mr. Ramirez's name would not have put LTD on actual notice of which accounts belonged to the plaintiffs, the plaintiffs' argument lacks merit.

scenario: identifying an account when an attorney uses identifying information inconsistent with the records that LTD maintains. *See* Pl.'s Obj. at 17 [Doc. No. 66] (arguing that a jury could find that "requiring a consumer or their attorney to provide exact address matches, full SSNs, and exact name matches to Defendant's database - which may not even be accurate or up-to-date - rather than having a procedure in place to handle in-exact matches to be unreasonable.").

As the magistrate judge properly pointed out, the bona fide error defense does not require the defendant "to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." R&R at 18 [Doc. No. 64] (citing *Bacelli v. MFP, Inc.,* 729 F. Supp. 2d 1328, 1333 (M.D. Fla. 2010)). In this case, the error at issue was contacting a consumer after LTD received notification that the consumer was represented by counsel, which LTD had ample procedures in place to guard against. The plaintiffs argue that it was unreasonable that LTD did not have procedures in place to handle attorney-representation letters containing client identifiers that were in-exact matches to their account-identifying system, but the record reflects that LTD did have such a procedure, made manifest by the two e-mails to the plaintiffs' attorney seeking additional information to locate the account(s) in question. The plaintiffs' attempt to turn the reasonableness of LTD's procedures into a jury question by arguing that LTD could have done more creates a burden higher

than the bona fide error exception requires.  *See Rhinehart*, 714 F. Supp. 2d at 1185 (noting the relevant procedures "need not be foolproof").  Accordingly, the court agrees with the magistrate judge that there is no genuine question of fact that LTD's December 11 phone call to Ms. Ramirez was bona fide error and summary judgment in favor of LTD is appropriate as to the plaintiffs' corresponding claims.

## IV.   Conclusion

For the reasons set forth herein, the court ADOPTS the R&R in full and GRANTS summary judgment in favor of LTC on all claims.  There being no issues remaining before the court, the clerk is directed to terminate this action.

**SO ORDERED** this 2nd day of September, 2021.


/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge